Casualty. May it please the Court, good morning, Your Honors. My name is Burt Zajac and with me is Amy Pikarsky and together we represent Sean and Eric Murphy in their case against State Farm Insurance Company. The underlying facts are really relatively simple. There was a fire in a multi-unit building that the Murphys owned over in the Wicker Park area. During the time the fire occurred, they had an insurance policy with State Farm and they brought a claim against State Farm to pay for the policy. And in its reaction to that, there was a sworn testimony taken of the Murphys and they explained that they indeed had been under contract to demolish the building and it had been that way for approximately six months and they were leaning heavily towards having the building demolished. And to cut to the end of the story, we filed suit eventually, took over their pro se complaint and after several years of litigation, the issue of whether the Murphys had an insurable interest was alleged by State Farm. And we responded citing probably the very limited law that exists, but we believe the best law on the subject, which was by the Seventh Circuit Court of Appeals applying Illinois law, that explained what we think is a very bright line, simple rule that should apply in the case of whether somebody has an insurable interest in property. And the case that we chose was the one that happened to be exactly on point. It dealt with the issue, the only issue, which is when a person has a demolition contract on a building, do they nonetheless have an insurable interest in the property so that if it is destroyed while that contract is pending, can they be entitled to recover under the policy? And the answer that the Seventh Circuit came up with after looking at Illinois law on the subject and the law of the land across the country was, why yes indeed, of course you should have an insurable interest and of course the insurance policy that you paid for, that you wanted to have enforced, should in fact apply and you should be entitled to get the payment for what occurred. And the reasoning is, I think, relatively self-evident, which is the policy is in effect until the building ceases to have any existence. Any existence? Well, as long as the building is still, has a useful existence. Let me add to that. Well, what if the demolition has begun and they only cave in the roof? If the demolition has begun, the law says that if it can be stopped, there's at least an argument that you're entitled to have insurable interest in the property. And thankfully, we're not before this Court arguing a point that's quite so pushed down on the chain of what actually occurred. But the majority of courts that seem to have addressed that specific issue say that not only does it still have an insurable interest if it can be stopped, it might not even be stopped. Except for the fact of what are the damages? You know, what's the value of a partially demolished building worth or the value of what was destroyed in a partially demolished building? But in a case like ours where you have a completely freestanding building and the only thing that you can say about it is, at the present time, it had no tenants and it wasn't being let to anybody, it existed. And the Murphys were leaning towards- Which was different than the building, I assume you're referring to Garcey. Yes. In that case, the building was actively being used in Garcey. Well, I think that there were a couple of buildings in Garcey and the- I assume the one you're talking about, though, the one that had not yet had any demolition work on it. Yes. It appears from the opinion that it did have some active use, but it was undeniable that the building had to be torn down because there was a new lease that had been signed for the And there was just absolutely no way that the owner wasn't going to be able to benefit from the property at the time. And, excuse me, let me take that back. I think I'm addressing the Liebermans. The Liebermans. The Liebermans. In the Garcey Corp, there was, in fact, an existing building and there was a fire. It did partially damage. There had been, I believe, even partial beginning steps taken for the demolition. And, nonetheless, the court said, look, there's an insurable interest here and- Well, they were still earning about $26,000 worth of their goods in that building. There was. And that's an interesting point because it was something that we've never even addressed because it was never even raised in the summary judgment issue, which is, what was the value of all the property that was still in the Murphys building? And without having put numbers on it, I mean, we did reference in our briefs a considerable amount of things that they had, which actually do have a salable value. The cabinetry, the water furnaces, the heaters, the dishwashers, the dryers, and things of that nature. In fact, the Murphys, as they've said, they were definitely leaning towards re-renting the property. But the fact that all that property was still in there, including all the windows were still up, which- They were leaning towards- They were leaning towards demolishing the building, excuse me. But they had never given up the idea of, maybe we'll just stop and we'll go back and re-rent it. It was a horrible time during the real estate industry, worse than it is today. And they hadn't decided for sure, they hadn't committed for sure what they wanted to do to the property. And I think that's evident from the fact that the owner of the demolition company looked at the contract and he said, yes, indeed, you know, I had a binding contract with these people. But normally we start work a week after we get the payment. Where do you fix the point in time when there is no longer an insurable interest? At what point in time? It's perhaps a fact-specific question, and I'm not going to try to evade the question. Well, Garci said it's when there's an irrevocable commitment to demolish. Correct. But the Garci decision, when they talked about irrevocable, they had a couple of points that they were noting. One was that the materials inside the building had already been pledged to the demolition company, and perhaps that was factored into the price. Nothing like that was the case here. I mean, the demolition company had no claim to anything. The Murphys had an undeniable- Yes. You're right. They had already been paid. There was no claim that the company had to anything that existed on the property. The contract provided nothing further. Correct. And he admitted. The owner of the company admitted that were the Murphys to back out, that was the end of it. He kept their $500 and have a good day. It's different than Garci Corp. where, in fact, in a building of that size, there's going to be considerable reclaimed materials or recycled materials, things that either get factored into what the cost of a contract would be when you determine how much you want to demolish it, much the way that a company that's doing recycling for the city of Chicago or any city would say, well, how much are we going to gain from reselling this, and we'll base our bid on how much it's going to cost to demolish it. So, the general fact is that, although perhaps it's impossible for me to stand here and give you a rule that would say, when can you definitely say that a contract is irrevocable, that you can't go forward, it's nothing like the contract that was at issue here. Demolition hadn't started. The contract was signed, and six months later, the Murphys still have a sign out in front of the building that they're trying to sell it. They're still actively contemplating whether they're doing the right thing. The demolition owner hadn't started because, for whatever reason, he knew that there was some reason not to go forward. And if the Murphys had, in fact, decided, you know what, we're pulling the plug on demolition. Let's go ahead and re-rent it. Unfortunately, a fire hit. And the fact is that damage was caused to the building, and it was not a small amount of damage. It was a significant amount of damage. Didn't destroy the building, but it was enough that they made a claim on their insurance policy, and the issue of whether there was an insurable interest, I'll point out, was so dicey, I think, for the insurance company at issue here, that the original complaint was filed, my goodness, at least five or six years before the insurance company even got the notion of saying, let's raise in defense to the litigation the fact that they don't have an insurable interest. I don't deny that the company put a little... Well, you didn't move to strike it on the basis that it was timely, right? No, and I'm not trying to suggest that the delay is a reason that it should be denied. You know, things come up during the case of a trial. It doesn't cause prejudice, and I won't pretend that we're somehow... What actually, other than the reversal of the summary judgment was granted for your opponent, are you asking us to do? I think that you could go one step further, and on the issue of insurable interest, you could enter summary judgment for us, and here's why. Well, I mean, can we really? I mean, can you enter summary judgment on a single issue? You can enter summary judgment on an entire claim. You can enter a partial summary judgment on the question of liability, leaving damages to be decided, but you can't enter summary judgment just on... Well, I'll say this. I would suggest that you could enter partial summary judgment on the third affirmative defense that they've raised, and that is... That doesn't resolve liability. It will not. They still have a right to defend the case on the other affirmative defenses that they've raised, but I think that the way the law reads, and the way I think it should read is, if there is a chance that these people will not demolish the building, then we don't want the jury to have to sit there and pontificate, well, was there a 6% chance that they were going to go forward, and if so, should we reduce... If they find in our favor, should we reduce the damages by that amount? The law, as GarciCorp explained it, or at least as it explained the other states that addressed that particular issue, said, if there's a chance that they weren't going to demolish it, they have an insurable interest. And to allow the jurors, then, to decide how much damage to the property was caused based on what was the likelihood of the demolition of the property. Isn't that a different issue? It is, but that's why I think that you should be entering partial summary judgment on the count three of the affirmative defense, which is there isn't really a reason to get to that issue. I think what you're talking about is a summary determination of a major issue under 2105D. It's not a partial summary judgment. Partial summary judgment is liability or no liability. It's partial summary judgment on the question of liability. And that's not decided. It's a summary determination of a major issue is actually what you want. Well, I'll walk away from this... Yeah, but unfortunately, if the circuit court enters that, the circuit court can change that, too. Correct. So... That's great. But I'll walk away happy if you simply say, look, under Illinois law, where there really isn't any specific law on this exact point, if you said, look, we believe that an owner of a building has an insurable interest in a property, notwithstanding a demolition contract, provided the demolition isn't irrevocable and hasn't caused some undeniable significant damage to the property, I'll take that and we'll be happy with that and we'll go back and deal with it. But what I think gets mucked up is that the defendant raises an issue about the definition of insurable interest, and they cite a bunch of cases that address it in a different point to get to the idea of did the plaintiff suffer some lost profit by not having the building or did they suffer some sort of disadvantage as a result of the damage. And I think that to look at it that way, that's where I said, look, all of those issues come into what is insurable interest, and then when you look at specifically in the context of a demolition contract, the courts then focus all of the points and say, here's what we mean, whether you have an insurable interest or not in a property that you're going to demolish, if it isn't started, if it isn't irrevocable, you still have an insurable interest. And I point out that I think when the old cases that are cited about the insurable interest meaning did you lose a profit, of course, if we were to simply be limited to were the Murphys renting the building at the time that it was destroyed, no, they weren't. Just like somebody that has a valuable piece of jewelry and puts it in a home safe and has no plans to sell it, and if it gets stolen nonetheless, did they lose some profit by not being able to use it? Of course not. What they lost was their property. And it should be self-evident that just because they weren't using that piece of jewelry to make a profit doesn't mean that they didn't lose something that when the property was stolen. And that's how I think when they talk about an insurable interest and use it the way that they try to in the context of a demolition contract, it kind of confuses the issue. Insurable interest in the way that they're talking about is, am I allowed to take out an insurance policy on my neighbor's car? And the question would be, well, what loss do I suffer if his car is destroyed? None. What disadvantage do I experience if his car is destroyed? None. And it comes up often in the context of things like biatical settlements where they sell the insurance policy for somebody that's terminally ill to another person, and some states have gone to the extreme of saying that the person that bought that policy from the original owner doesn't have an insurable interest because they suffer no loss when that person dies, tied specifically to their death, et cetera. But when we're talking about something like a vacant building, and I hesitate to use the word vacant because it wasn't completely empty. It just was unoccupied. So if we're talking about an unoccupied building, when there's damage to it by a fire that was as extreme as we allege it was, these people suffer a loss. It's their property. Whether they were using it for anything that created profit at the time or whether they were letting it lay fallow for a time shouldn't change the fact. I think that the last thing that the courts of Illinois should be doing is getting into some sort of an analysis of, does somebody who owns property really like that property enough that they should be entitled to receive money because of its destruction when it was insured? Do they really have some benefit that they would have used? Because then we're getting into speculation as to what are these people going to do? There is objective proof of what the contract to demolish, what your client was headed towards. No doubt. I mean, they were definitely leaning heavily towards demolition. But from the time that they did their sworn testimony before they had an attorney to the time through the depositions of themselves in the case, they have never wavered from the idea that they hemmed and they hawed, they hesitated and asked themselves were we making the right decision. And the one thing that happened is the ability to make any decisions other than demolish it were taken away from them when the insurance company did not want to pay for the damage. Because honestly, what do you do when you have a building where you've sent the tenants away from and you experience a $60,000 loss at the building and the insurance company says we're not going to pay for any of the repairs on that building? And you have two choices. You can say, well, we were thinking about demolishing it, and I guess why not just go forward then because the alternative is in a $60,000 to get back to the point of what we were going to do. Thank you. We'll give you some time to vote.  May it please the Court, Hi, Your Honors. My name is Isaac Melton. I represent State Farm Mutual, or excuse me, State Farm Fire and Casualty Company in this matter. I guess as a starting point, as far as the bright line rule in Illinois, and I think it's clear from not only Illinois case law and specifically Lieberman, the Lieberman decision, which deals with demolitions, the bright line rule is that you do not have an insurable interest unless you can prove that you're going to gain something by the continued existence of a property, whether it be a building or anything else, or you can show that you've suffered a loss by the destruction of that property. That is the bright line rule here in Illinois, and it does deal with demolitions because Lieberman is a case involving demolitions. That case specifically went and went through to find out whether the insured in that case could show some disadvantage by the destruction of the property. The plaintiffs cannot show that they have suffered. In Lieberman, though, there was just more than the demolition contract. There was the contract to lease or to sell the property required them to go ahead and demolish it. Isn't that correct? I mean, there was like two contracts that worked there that really boxed the insured. Yes. But I think what the court held their hat on was that the fact that they suffered by the plaintiffs with the destruction of the property, they were not able to show that they could gain. In Lieberman, the demolition was already started. Correct. But again, I don't think that that's what they were holding there. They made their actual decision on it. I think they went through and found that there was nothing that the plaintiff could show that there was an increase in the demolition costs or the construction costs or anything like that. And I think if you go through the Garci case itself and all the cases cited by this factor of whether there is an increase in if there is a loss suffered by the destruction, by the demolition, or there's a fire loss that occurs or the tornado that comes through, is there a loss suffered? Every one of the cases that they found that there is still an insurable interest, the property was still in use. That is not the case that we have here. The plaintiffs were not using this property. They had pulled the gas. They had taken out all the tenants. They were not residing in the property. The property didn't help. Let me ask you a question. At the time of the loss there, could the plaintiffs have put the gas meters back in, re-hooked up the electricity, and leased the property? They absolutely could have, but they didn't. Well, they didn't because it started on fire. But the question is, could they have? Yes, they absolutely could have. So why do I lose my insurable interest when I still have options? Well, I think, first of all, I think it's misleading to say that these people were not, I think if you read their actual testimony, they specifically go through and tell you that they weren't renewing leases because they planned on tearing down the property. No doubt about it. They talk about the actual timing of the actual demolition was a week after the fire, and that's page 352 of the record. Yes, they can change their mind. I don't think that's the case here. I don't think they were going to change their mind. I think the evidence in the record is clear. But Garci talks in terms of irrevocable commitments to demolish. Their commitment to demolish was not irrevocable. They could have changed their mind. I think the steps that they had taken showed that their commitment to demolish the property was, in fact, irrevocable. Why? They had pulled everything. They had withdrawn the tenants. They had not renewed the leases. Well, what makes it irrevocable? The fact that they had a contract in place. They would have forfeited $500 if they did not go forward with that demolition. That's the only thing that contract provides for. Demolition company couldn't sue for any more. Would have forfeited the $500. That's hardly irrevocable. I think the steps and the actions that they took show an irrevocable commitment to doing this. And I think it's not necessarily the fact that they have an irrevocable commitment to doing this, but whether they are going to continue to gain a benefit from this property. They're not doing that. They're not getting rental income. In fact, on the opposite, they're – Do I have to be getting rental income to have an insurable income? You have to show some sort of advantage by having – I get no rental income from my home. I'm entitled to take a fire policy on it, aren't I? You're living in your home, so you're getting advantage by having that property as – What if my house is vacant? Then there's a question, I think. I think it's a fact – You actually think that there's a question of whether I have an insurable interest in my house when I'm not living in it? If there's no utilities on, if you've pulled the gas meters, if there's nothing of worth inside your home, I think there's definitely a question of whether it's an insurable interest. Who said there was nothing of worth inside this building? There are no – there's no real evidence that there is any items of value inside the evidence. Counsel says that during this – There's no evidence as to the value of the items, but there's evidence that there are items. And I think that's – I think it's the plaintiff's burden to show that those items that are inside the property actually have some value. I think it's disingenuous for counsel to say that during the summary judgment motions that this issue was never brought up. We've alleged insurable interest throughout and said that there was nothing of value inside the home. So I think it's then on plaintiff to come forward with real evidence other than this vague assertion that there were – later on at some unknown point in time. So I think there is nothing – there's no proof of any – no proof of anything of actual value inside the home. And I think that goes to the point of there being no insurable interest at the time of the actual loss. And I think there's a good reason for this. And I think if you read the Illinois case law as far as why there is this need for a showing of some benefit by the continued existence or a loss by the destruction is insurance – there should not be an ability or a person to have an interest in wanting to destroy a property if there's no actual insurable interest. It's much like the car – someone else's car that you take an insurance policy out on. You don't have an insurable interest because you're not going to suffer any loss by the destruction of that. And you're not going to gain an advantage. Do you have any evidence in the record that this property at 2128 North Winchester was worth at the time of the fire no more than the value of the raw land it sat on? No. Well, if the building had some value and it's destroyed by fire, don't I lose something? To the plaintiffs, this building did not have any value. And again, I think that's shown by the fact that the tenants are out in the building, that there is no gas, there is no water, there's no electricity, there's no items of value inside the building. These plaintiffs are not residing in this property. So the property itself to these specific plaintiffs has no value to them. And pursuant to Illinois case law, because of that, they do not have an insurable interest in the actual property itself. And again, I think if you go through their actual testimony, they talk throughout about the fact that they are going to demolish this property. And again, I think it's misleading to say that they were waxing and waning. They talk about, and this is mostly in their examinations on earth, which take place much closer to the time of the fire than their depositions when they're represented by an attorney. But they talk about they're not actively renting the property because they're in the process of demolishing it. They're going to tear the building down at the time of the fire. Their answers to interrogatories when asked specifically point blank, what was the use of the building prior to the fire, their answer is simply that they were going to demolish that property. There's no other answer within those interrogatory answers. A sworn interrogatory answer is signed by both plaintiffs that they were going to do anything other than demolish the property. That's what they intended. That's what they were going to do. The plaintiff points out that there was this contract for demolition and usually these demolition contracts and the demolition occurs within a week. And he asked the question, well, something is holding this up. And in the examination under oath of Eric Murphy, he tells you what's holding this up. They're waiting on permits from the city. He has an architect. To build plans for this property that they're going to build after the lost location is demolished. And he has the architect getting construction permits. And they don't get those construction permits until February or March. And that's what's holding up this process. Again, they have verbal agreements with contractors for the building of this property. And they have nearly a million dollar construction loan. So again, to say that this isn't irrevocable, I think it flies in the face of logic in this instance. They were definitely going to demolish this place. They had taken numerous steps down that path to demolishing this property. At the time of the actual loss itself, they could not show and they cannot show that they were going to suffer any loss by its destruction and they were not getting any advantage from it. Again, a plaintiff pointed out in their arguments that the GarciCorp case is that an insurable interest is around if the building has a useful existence. Again, in this instance, there is no useful existence that this building had. Clearly the case is that the plaintiffs were going to demolish the building. And I think pursuant to Illinois case law, as well as the Garci case, and again, going through all the cases cited by Garci, all those buildings were still in use at the time of the actual loss. And that is why there was still an insurable interest. That is not the case here. And therefore, I believe that the trial court's granting summary judgment was improper. Thank you. Thank you, Counsel.  Ronald? Three points that I'd like to address. One is I think that the facts are being pushed to a point that they really aren't, they don't warrant. The idea that we had verbal contracts with contractors, et cetera, I don't think you're going to find anything more than my clients had spoken with people about what would be involved in building a home that was different than the one that was there, if they were to demolish it. The evidence just doesn't support that we had verbal contracts for this sort of thing. And here's the reason why. Of course, people that are contemplating one avenue or another avenue of what to do, talk to people and figure out what would be involved, what would it cost, et cetera. And we're suggesting that this court should not treat as written in stone and unchangeable and unmodifiable any time somebody makes the first amount of investigation into what they want to do. There are vacant properties all over this city right now that were foreclosed upon and are owned by the lenders that held the mortgages, and it's undeniable that these homes are being sold and they're being sold for amounts that are more than zero. These vacant homes have value in and of themselves just because they are existing structures. This building had a value in and of itself because it was an existing structure. There were items in there that had a value that could have been sold. I really take objection to the argument when my opponent argues that it was our burden to show that these things had a value. This was a motion for summary judgment, not a trial. It's their burden to show that there was no value in here. There was no mention in their motion about these items had no value. There was no factual evidence supported. They certainly might have made some sort of conclusory statement that you could interpret it today to say it had no value, but there was not a scintilla of evidence that they put in that ever required the rebuttal of anything through evidence, and that's why we cited in our brief a number of cases that talk about when they're the movement, it's different than a trial. They have to come forward with something that tells you what they're basing their conclusion that there's no value on, and there wasn't anything in there. The other point that I think is really noteworthy is the argument boils down to what I heard my opponent say. Actually, his words were, I don't think that they intended to do anything but tear the building down. Got it. That's what he thinks. That's what the insurance company thinks, and that's why they don't want to pay out. But we're not sitting at the insurance company. We're sitting in a court of law, and the issue is, but what does the evidence show? And we have a trier of fact, and in this case, the trier of fact is a jury, and we ask that the jury be allowed to decide, do they agree with him, his view that is biased, perhaps, in favor of his client? Not unlike my view is biased in favor of my client's, but let's let the impartial people say, let me hear what these people have to say, let me look at their prior statements and see if I really think that they intended to demolish the building or if they were uncertain what they wanted to do. Because if they were uncertain, there's really no reason that the building should not be insured. Just like a building that you might leave, you're moving to another state, you turn off the power, you turn off the electricity, and you stop having the mail forwarded there, it doesn't cease having a value, and it doesn't cease being your building, and if you have an insurance policy on it, I posit that it should still be insured should it get destroyed, even though you're doing nothing with the property. It's yours, you have a right to sell it if you choose, even if we're thinking about doing something different with it. And I think it's going to be a really, really devastating situation, both for insurers and for people in Illinois, if the fact that you ever mention to anybody that you're thinking about doing one thing, that that means that you're locked and you can't argue differently to anybody and you never get a right to rely on your insurance. Because the example I gave is, what if an adult wants to give their adult child their car and it gets destroyed the day before they give it away? They weren't going to keep the car. Should the car be insured or not? And I think that that example is very similar to this one. Thank you. Thank you. The matter will be taken under advisement. We'll issue our opinion in due course. Thank you.